1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## WESTERN DISTRICT OF WASHINGTON

10

11    TAMMY RANO, on behalf of themselves and
all others similarly situated,

Case No. 2:22-cv-01652

12
                                    Plaintiff,          **COMPLAINT—CLASS ACTION**
13
                                                        **DEMAND FOR JURY TRIAL**
14        vs.

15    CONVERGENT OUTSOURCING, INC.,

16                                  Defendant.

17

18        Rano ("Plaintiff"), through her attorneys—individually and on behalf of all others

19    similarly situated—brings this Class Action Complaint against Defendant Convergent

20    Outsourcing, Inc. ("Defendant"), and its present, former, or future direct and indirect parent

21    companies, subsidiaries, affiliates, agents, and/or other related entities, alleging as follows:

22                              **I.  NATURE OF ACTION**

23        1.        Defendant is a third-party debt collector.  As such, Defendant stores a litany of

24    highly sensitive personally identifiable information ("PII"). But Defendant lost control over that

25    PII when cybercriminals infiltrated its insufficiently protected computer systems in a data breach

26    (the "Data Breach").

27

COMPLAINT—CLASS ACTION - 1

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

2.    On June 17, 2022, Defendant was hacked by an unauthorized third-party who "deployed a ransomware malware" and then used "data extraction tools . . . to save and share files."[1] Because of Defendant's Data Breach, the following types of PII were compromised: names, contact information, financial account numbers, and Social Security numbers.[2]

3.    In total, Defendant injured 640,906 persons—via the exposure of their PII—in the Data Breach.[3] Upon information and belief, these 640,906 persons include, *inter alia*, the current and former debtors that Defendant targeted for collections.

4.    As part of its collections business, Defendant receives and maintains the PII of thousands of individuals. In doing so, Defendant implicitly promises to safeguard their PII.

5.    Under state and federal law, businesses like Defendant have duties to protect consumers' PII and to notify them about breaches.

6.    Under RCW § 19.255.010(2), a "business that maintains or possesses data that may include personal information . . . shall notify the owner or licensee of the information of any breach of the security of the data *immediately* following discovery." Here, Defendant waited over *four months* to begin notifying the Class.

7.    Defendant recognizes these duties, declaring that "Convergent takes the confidentiality, privacy, and security of information in our care seriously."[4]

8.    It is unknown for precisely how long the ransomware hackers had access to Defendant's network before the breach was discovered, meaning that Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems, thereby allowing cybercriminals unfettered access to consumer PII.

---

[1] *Notice of Data Breach*, MONT. DEPT OF JUSTICE, https://dojmt.gov/wp-content/uploads/Consumer-Notification-Letter-677.pdf (Oct. 26, 2022).
[2] *Id.*
[3] *Data Breach Notifications*, MAINE ATTORNEY GEN. https://apps.web.maine.gov/online/aeviewer/ME/40/b5be3a2c-d7bd-4b77-83da-d85b55f9dfe8.shtml (last accessed Nov. 15, 2022).
[4] *Id.*

COMPLAINT—CLASS ACTION - 2

9. On information and belief, cybercriminals were able to breach Defendant's systems because it does not adequately train its employees on cybersecurity or maintain reasonable security safeguards or protocols to protect the Class's PII—leaving it an unguarded target for theft and misuse.

10. After the Data Breach, Defendant waited over four months to notify consumers—leaving consumers in the dark and depriving them an opportunity to mitigate their injuries.

11. Plaintiff is a Data Breach victim, receiving a breach notice dated October 26, 2022. She brings this Class Action on behalf of herself, and all others harmed by Defendant's misconduct.

## II. PARTIES

12. Plaintiff, Tammy Rano, is a natural person and citizen of Maine. She resides in Auburn, Maine where he intends to remain. And now, Plaintiff is a victim of Defendant's Data Breach.

13. Defendant, Convergent Outsourcing, Inc., is a Washington Profit Corporation with its principal place of business at 800 SW 39th Street, Suite 100, Renton, Washington 98057.

## III. JURISDICTION AND VENUE

14. This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendant are citizens of different states. And there are over 100 putative Class Members.

15. This Court has jurisdiction over Defendant because it is headquartered in Washington, regularly conducts business in Washington, and has sufficient minimum contacts in Washington.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendant's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1

## IV.  BACKGROUND FACTS

2    ***Defendant Convergent Outsourcing, Inc***

3         17.    Defendant is a third-party debt collector. And it advertises that it "is one of

4    America's leading collection agencies."[5] Specifically, Defendant works on behalf of creditors

5    such as "Telecommunications" and "Cable Companies."[6]

6         18.    Defendant has been in business "[f]or more than sixty years" and today has

7    "offices across the country."[7] Defendant states that "Convergent Outsourcing is not a scam."[8]

8         19.    Defendant maintains that "[w]e *do not* share your Personal Information . . . with

9    third parties . . . unless you consent to such sharing at the time you provide your Personal

10   Information."[9]

11        20.    Furthermore, Defendant states that "[w]e endeavor to incorporate *commercially*

12   *reasonable* safeguards to help protect and secure your Personal Information."[10]

13        21.    Defendant reveals that it collects a litany of highly sensitive personal information.

14   Specifically, Defendant states that it collects the following information:

15                    a.    "Identifiers, including first and last name, home address, email address,

16                          phone number, Social Security number, or other similar identifiers."[11]

17                    b.    "Professional or employment information, or other affiliated company

18                          names."[12]

19

20   ─────────────────────

[5] *Outsourcing*, CONVERGENT, https://www.convergentusa.com/outsourcing/ (last accessed Nov. 11, 2022).

21   [6] *Questions about Convergent*, CONVERGENT, https://www.convergentusa.com/outsourcing/question/list?type=A (last visited Nov. 11, 2022).

22   [7] *We Are Convergent Outsourcing*, CONVERGENT, https://www.convergentusa.com/outsourcing/site/who-is-convergent-outsourcing (last visited

23   Nov. 11, 2022).

24   [8] *Questions about Convergent*, CONVERGENT, https://www.convergentusa.com/outsourcing/question/list?type=A (last visited Nov. 11, 2022).

25   [9] *Privacy Policy,* CONVERGENT, https://www.convergentusa.com/outsourcing/page/privacy-policy#q3a, (last accessed Nov. 11, 2022) (emphasis added).

26   [10] *Id*. (emphasis added).

[11] *Id*.

27   [12] *Id*.

COMPLAINT—CLASS ACTION - 4

c.    "Account information, including account number and online account information."[13]

d.    "Financial information, including bank account and payment card information."[14]

e.    "Audio, electronic, visual, or similar information."[15]

f.    "Internet or other electronic network activity information, including, but not limited to, your IP address, unique device identifier, device functionality (including browser, operating system, hardware, mobile network information), your device location, your device characteristics, the time of day you visit our Site, the URL that referred you to our Site, browsing history, search history, and information regarding your interaction with our Site, application, or advertisements, including the areas within our Site that you visit and your activities there."[16]

g.    "Any other information that identifies, relates to, describes, is reasonably capable of being associated with, or could be reasonably linked, directly or indirectly, with you or your household."[17]

22.    Defendant explicitly admits that it has "business or commercial purposes for collecting [your] personal information."[18] Specifically, Defendant admits that it *benefits* from collecting such sensitive information in the following ways:

a.    "To perform services, including maintaining or servicing accounts, providing customer service, verifying customer information, processing payments, and obtaining information for debt collection purposes."[19]

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

b.    "To improve . . . our marketing endeavors, or our product / service offerings."[20]

c.    "To help us collect a debt on behalf of one of our clients."[21]

d.    "To undertake internal research for technological development and demonstration."[22]

e.    "For internal business purposes."[23]

f.    "To comply with federal, state, or local laws."[24]

g.    "To exercise or defend legal claims."[25]

h.    "To conduct any other legitimate business activities not otherwise prohibited by law."[26]

23.    Defendant recognizes that has duties to "comply with state laws, federal laws, and various . . . regulations."[27]

### Defendant's Data Breach

24.    In collecting and maintaining the PII, Defendant agreed it would safeguard the data according to its internal policies and state and federal law.

25.    Defendant failed its duties when its inadequate security practices caused the Data Breach.

26.    On June 17, 2022, Defendant was hacked by an unauthorized third-party. Specifically, "an external actor gained unauthorized access to [Defendant's] systems and

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Is Convergent Outsourcing a Real Company?*, CONVERGENT, https://www.convergentusa.com/outsourcing/page/is-convergent-outsourcing-a-scam (last accessed Nov. 11, 2022).

COMPLAINT—CLASS ACTION - 6

deployed a ransomware malware."[28] Then, "the unauthorized actor deployed certain data extraction tools on one storage drive that is used to save and share files internally."[29]

27.    And thus, at least the following types of PII were compromised: names, contact information, financial account numbers, and Social Security numbers.[30]

28.    Upon information and belief, Class Members consist of, *inter alia*, the current and former debtors that Defendant targeted as part of its collections business.

29.    Because of Defendant's Data Breach, the PII of Plaintiff and Class Members was exposed to criminals. And these were not mere garden variety criminals. Rather these criminals were malicious and sophisticated insofar as they deployed a ransomware attack.

30.    Still, Defendant claims that it "takes the confidentiality, privacy, and security of information in our care seriously."[31] But regardless, this Data Breach caused widespread injury and monetary damages.

31.    Since the breach, Defendant has "deployed additional cybersecurity measures and reviewed policies and procedures relating to data privacy and security to further harden our systems against future attacks."[32] But this is too little too late. Simply put, these measures—which Defendant now recognizes as necessary—should have been implemented *before* the Data Breach.

32.    Defendant impermissibly delayed notifying the victims of the Data Breach. After all, it took Defendant *over four months* to begin notifying the victims.[33] Such a delay is clearly counter to Washington law—which mandates that "[n]otification to affected consumers under

---

[28] *Notice of Data Breach*, MONT. DEPT OF JUSTICE, https://dojmt.gov/wp-content/uploads/Consumer-Notification-Letter-677.pdf (Oct. 26, 2022).
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *Id*.
[33] *Id*. (providing a send date of Oct. 26, 2022).

COMPLAINT—CLASS ACTION - 7

1    this section must be made in the most expedient time possible, without unreasonable delay, and

2    no more than thirty calendar days after the breach was discovered."[34]

3        33.    In short, this unnecessary delay prevented Plaintiff and Class Members from

4    taking the necessary actions to protect themselves. Thus, by delaying the notification process,

5    Defendant allowed the injuries of Plaintiff and Class Members to fester and spread.

6        34.    On information and belief, Defendant failed to adequately train its employees on

7    reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose

8    control over its PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach

9    and stop cybercriminals from accessing PII. Further, the Notice of Data Breach makes clear that

10   Defendant cannot, or will not, determine the full scope of the Data Breach, as it has been unable

11   to determine exactly what information was stolen and when.

12       35.    Defendant has done little to remedy its Data Breach. True, Defendant has offered

13   some victims "twelve months of credit monitoring and identity protection services."[35] But upon

14   information and belief, a mere twelve months of services is wholly insufficient to compensate

15   Plaintiff and Class Members for the injuries that Defendant inflicted upon them.

16       36.    Moreover, Defendant simply directs the victims to "remain vigilant and monitor

17   your account statements, insurance transactions, and free credit reports for potential fraud and

18   identity theft, and promptly report any concerns."[36]

19       37.    Because of Defendant's Data Breach, the sensitive PII of Plaintiff and Class

20   Members has been released into the hands of cybercriminals and the public domain—inflicting

21   numerous injuries and significant damages upon Plaintiff and Class Members.

22   ***Plaintiff's Experience and Injuries***

23       38.    Plaintiff Tammy Rano was injured by Defendant's Data Breach.

24

25   [34] WASH. REV. CODE § 19.255.010 (2016).

26   [35] *Notice of Data Breach*, MONT. DEPT OF JUSTICE, https://dojmt.gov/wp-content/uploads/Consumer-Notification-Letter-677.pdf (Oct. 26, 2022).

27   [36] *Id*.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

39.    Until now, to Plaintiff's knowledge, Plaintiff's information had never been exposed in a data breach. But Defendant's Data Breach changed that.

40.    Plaintiff is unsure how her PII came into Defendant's possession.

41.    Plaintiff received a Notice of Data Breach which was dated October 26, 2022.

42.    After receiving the Notice of Data Breach, Plaintiff took time to call the number provided by Defendant. Through that call, Plaintiff learned that much of her highly sensitive personal information was exposed in the ransomware attack.

43.    The information of Plaintiff that was compromised includes her name, contact information, financial information, and Social Security number.

44.    Plaintiff has spent—and will continue to spend—considerable time and effort monitoring her accounts to protect herself from identity theft. Plaintiff fears for her personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration—all because of Defendant's Data Breach. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are exactly the sort of harms to a Data Breach victim that the law contemplates and addresses.

45.    Plaintiff suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that Defendant was required to adequately protect and which was compromised in and as a result of the Data Breach.

46.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her PII being placed in the hands of unauthorized third parties and possibly criminals. This injury was worsened by Defendant's delay in revealing the true nature of the threat to Plaintiff's PII.

47.    Plaintiff has a continuing interest in ensuring that her PII—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from future breaches.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

48.    Plaintiff and Class Members suffered injury from the misuse of their PII that can be directly traced to Defendant.

49.    Because of Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.    The loss of the opportunity to control how their PII is used;

b.    The diminution in value of their PII;

c.    The compromise and continuing publication of their PII;

d.    Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.    Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.    Delay in receipt of tax refund monies;

g.    Unauthorized use of stolen PII; and

h.    The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fail to undertake the appropriate measures to protect the PII in their possession.

50.    Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

51.    The value of Plaintiff and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

52.     It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

53.     One such example of criminals using PII for profit is the development of "Fullz" packages.

54.     Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

55.     The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

56.     Defendant disclosed the PII of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

57.    Defendant's failure to properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Failed to Follow FTC Guidelines***

58.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

59.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

a.    Protect the personal customer information that they keep;

b.    Properly dispose of personal information that is no longer needed;

c.    Encrypt information stored on computer networks;

d.    Understand their network's vulnerabilities; and

e.    Implement policies to correct security problems.

60.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

61.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

62.    The FTC has brought enforcement actions against businesses for failing to

COMPLAINT—CLASS ACTION - 12

adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

63.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## V.  CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

65.     All individuals residing in the United States whose PII was compromised in the Data Breach discovered by Convergent Outsourcing, Inc. in June 2022.

66.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

67.     Plaintiff reserves the right to amend the class definition.

68.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

69.     **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 640,906 members.

70.     **Commonality and Predominance**. Plaintiff and the Class's claims raise predominantly common fact and legal questions, which predominate over any questions

COMPLAINT—CLASS ACTION - 13

affecting individual Class members, that a class wide proceeding can answer for all Class members. Indeed, it will be necessary to answer the following questions:

    a.    If Defendant had a duty to use reasonable care in safeguarding Plaintiff and the Class's PII;

    b.    If Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    If Defendant were negligent in maintaining, protecting, and securing PII;

    d.    If Defendant breached contract promises to safeguard Plaintiff and the Class's PII;

    e.    If Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    f.    If Defendant's Breach Notice was reasonable;

    g.    If the Data Breach caused Plaintiff and the Class injuries;

    h.    What the proper damages measure is; and

    i.    If Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

71.    **Typicality**. Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

72.    **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with Class members' interests. They have also retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

73.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

by individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done to them.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts and would also increase the delay and expense to all parties and the courts.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

74.    Plaintiff realleges all previous paragraphs as if fully set forth below.

75.    Plaintiff and Class Members entrusted their PII to Defendant. Defendant owed to Plaintiff and other Class Members a duty to exercise reasonable care in handling and using the PII in its care and custody, including implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

76.    Defendant owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendant's failure to adequately safeguard their PII in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PII—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiff' and Class Members' PII by disclosing and providing access to this information to third parties and by failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

77.    Defendant owed to Plaintiff and Class Members a duty to notify them within a

COMPLAINT—CLASS ACTION - 15

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

reasonable timeframe of any breach to the security of their PII. Defendant also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

78.    Defendant owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiff' and Class Members' personal information and PII.

79.    Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff and Class Members' PII.

80.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect consumers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff and the Class Members' sensitive PII.

81.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

82.    The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that Defendant hold vast amounts of PII, it was inevitable that

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1    unauthorized individuals would attempt to access Defendant's databases containing the PII—

2    whether by malware or otherwise.

3        83.    PII is highly valuable, and Defendant knew, or should have known, the risk in

4    obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class Members' and the

5    importance of exercising reasonable care in handling it.

6        84.    Defendant breached its duties by failing to exercise reasonable care in supervising

7    its agents, contractors, vendors, and suppliers, and in handling and securing the personal

8    information and PII of Plaintiff and Class Members which actually and proximately caused the

9    Data Breach and Plaintiff and Class Members' injury. Defendant further breached its duties by

10   failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members,

11   which actually and proximately caused and exacerbated the harm from the Data Breach and

12   Plaintiff and Class Members' injuries-in-fact. As a direct and traceable result of Defendant's

13   negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will

14   suffer damages, including monetary damages, increased risk of future harm, embarrassment,

15   humiliation, frustration, and emotional distress.

16       85.    Defendant's breach of its common-law duties to exercise reasonable care and its

17   failures and negligence actually and proximately caused Plaintiff and Class Members actual,

18   tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by

19   criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII,

20   and lost time and money incurred to mitigate and remediate the effects of the Data Breach that

21   resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are

22   ongoing, imminent, immediate, and which they continue to face.

### SECOND CAUSE OF ACTION
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

23
24

25       86.    Plaintiff and Class Members incorporate the above allegations as if fully set forth

26   herein.

27

COMPLAINT—CLASS ACTION - 17

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

87.     Plaintiff and Class Members were required to provide their PII to Defendant as a condition of receiving services provided by Defendant. Plaintiff and Class Members provided their PII to Defendant or its third-party agents in exchange for Defendant's services or employment.

88.     In turn, and through internal policies, Defendant agreed they would not disclose the PII it collects to unauthorized persons. Defendant also promised to safeguard PII.

89.     Plaintiff and the Class Members accepted Defendant's offers by disclosing their PII to Defendant or its third-party agents in exchange for employment or services.

90.     Implicit in the parties' agreement was that Defendant would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

91.     Plaintiff and the Class Members would not have entrusted their PII to Defendant or its third-party agents in the absence of such agreement with Defendant.

92.     Defendant materially breached the contract(s) it had entered with Plaintiff and Class Members by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information. Defendant further breached the implied contracts with Plaintiff and Class Members by:

        a.     Failing to properly safeguard and protect Plaintiff and Class Members' PII;

        b.     Failing to comply with industry standards as well as legal obligations that are necessarily incorporated into the parties' agreement; and

        c.     Failing to ensure the confidentiality and integrity of electronic PII that Defendant created, received, maintained, and transmitted.

93.     The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendant's material breaches of their agreement(s).

94.     Plaintiff and Class Members have performed as required under the relevant

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

1  agreements, or such performance was waived by the conduct of Defendant.

2  95.    The covenant of good faith and fair dealing is an element of every contract. All

3  such contracts impose upon each party a duty of good faith and fair dealing. The parties must act

4  with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in

5  connection with executing contracts and discharging performance and other duties according to

6  their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently,

7  the parties to a contract are mutually obligated to comply with the substance of their contract in

8  addition to its form.

9  96.    Subterfuge and evasion violate the obligation of good faith in performance even

10  when an actor believes their conduct to be justified. Bad faith may be overt or may consist of

11  inaction, and fair dealing may require more than honesty.

12  97.    Defendant failed to advise Plaintiff and Class Members of the Data Breach

13  promptly and sufficiently.

14  98.    In these and other ways, Defendant violated its duty of good faith and fair dealing.

15  99.    Plaintiff and Class Members have sustained damages because of Defendant's

16  breaches of its agreement, including breaches thereof through violations of the covenant of good

17  faith and fair dealing.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

20  100.    Plaintiff and Class Members incorporate the above allegations as if fully set forth

21  herein.

22  101.    This claim is pleaded in the alternative to the breach of implied contractual duty

23  claim.

25  102.    Plaintiff and Class Members conferred a benefit upon Defendant. After all,

26  Defendant benefitted from using their PII to facilitate their collections business.

27

COMPLAINT—CLASS ACTION - 19

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

103.    Defendant itself admits that it has "business or commercial purposes for collecting [your] personal information."[37]

104.    For example, Defendant admits that collecting PII helps it "[t]o perform services, including maintaining or servicing accounts, providing customer service, verifying customer information, processing payments, and obtaining information for debt collection purposes."[38] Defendant also admits that it collects PII "[t]o help us collect a debt on behalf of one of our clients."[39]

105.    Defendant appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Class Members. And simply put, Defendant benefited from the receipt of Plaintiff and Class Members' PII, as this was used to provide its goods and services.

106.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff and the proposed Class's services and their PII because Defendant failed to adequately protect their PII.

107.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

## FOURTH CAUSE OF ACTION
### Violation of the Washington Data Breach Disclosure Law
### (On Behalf of Plaintiff and the Class)

108.    Plaintiff incorporates all previous paragraphs as if fully set forth below.

109.    Under RCW § 19.255.010(2), "[a]ny person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data

---

[37] *Id*.
[38] *Id*.
[39] *Id*.

COMPLAINT—CLASS ACTION - 20

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person."

110.    Here, the Data Breach led to "unauthorized acquisition of computerized data that compromise[d] the security, confidentiality, [and] integrity of personal information maintained by" Defendant, leading to a "breach of the security of [Defendant's] systems," as defined by RCW § 19.255.010.

111.    Defendant failed to disclose that the PII—of Plaintiff and Class Members—that had been compromised "immediately" upon discovery, and thus unreasonably delayed informing Plaintiff and the proposed Class about the Data Breach. Instead, Defendant waited over four months to begin notifying the Class.

### FIFTH CAUSE OF ACTION
**Violation of the Washington Consumer Protection Act**
**(On Behalf of Plaintiff and the Class)**

112.    Plaintiff incorporates all previous paragraphs as if fully set forth below.

113.    Defendant is a "person" under the Washington Consumer Protection Act, RCW § 19.86.101(1), and they conduct "trade" and "commerce" under RCW § 19.86.010(2).

114.    Plaintiff and other members of the proposed Class are "persons" under RCW § 19.86.010(1).

115.    Defendant's failure to safeguard the PII exposed in the Data Breach constitutes an unfair act that offends public policy.

116.    Defendant's failure to safeguard the PII compromised in the Data Breach caused Plaintiff and the proposed Class substantial injury. Defendant's failure is not outweighed by any countervailing benefits to consumers or competitors, and it was not reasonably avoidable by consumers.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

117.    Defendant's failure to safeguard the PII disclosed in the Data Breach, and its failure to give time and complete notice of the Data Breach to victims, is unfair because these acts and practices are immoral, unethical, oppressive, and unscrupulous.

118.    Defendant's unfair acts or practices occurred in its trade or business and have injured and can injure a substantial portion of the public. Defendant's general conduct as alleged injures the public interest, and the acts Plaintiff complains of are ongoing and have a substantial likelihood of being repeated.

119.    As a direct and proximate result of Defendant's unfair acts or practices, Plaintiff and the proposed Class suffered an injury in fact.

120.    Because of Defendant's conduct, Plaintiff and Class Members suffered actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's conduct, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

121.    Plaintiff and the proposed Class are entitled to an order enjoining the conduct complained of and ordering Defendant to take remedial measures to prevent similar data breaches; actual damages; treble damages under § 19.86.090; and the costs of bringing this suit, including reasonable attorney fees.

## SIXTH CAUSE OF ACTION
### Declaratory Judgment
### (On Behalf of Plaintiff and the Class)

122.    Plaintiff and Class Members incorporate the above allegations as if fully set forth herein.

123.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those

COMPLAINT—CLASS ACTION - 22

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

alleged herein, which are tortious and which violate the terms of the federal and state statutes described above.

124.    An actual controversy has arisen in the wake of the Data Breach at issue regarding Defendant's common law and other duties to act reasonably with respect to employing reasonable data security. Plaintiff alleges Defendant's actions in this respect were inadequate and unreasonable and, upon information and belief, remain inadequate and unreasonable. Additionally, Plaintiff and the Class continue to suffer injury due to the continued and ongoing threat of new or additional fraud against them or on their accounts using the stolen data.

125.    Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendant owed, and continues to owe, a legal duty to employ reasonable data security to secure the PII with which it is entrusted, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

    b.    Defendant breached, and continues to breach, its duty by failing to employ reasonable measures to secure individuals' personal and financial information; and

    c.    Defendant's breach of its legal duty continues to cause harm to Plaintiff and the Class.

126.    The Court should also issue corresponding injunctive relief requiring Defendant to employ adequate security protocols consistent with industry standards to protect its clients' (i.e. Plaintiff's and the Class's) data.

127.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another breach of Defendant's data systems. If another breach of Defendant's data systems occurs, Plaintiff and the Class will not have an adequate remedy at law because many of the resulting injuries are not readily quantified in full

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted to compensate Plaintiff and the Class for their out-of-pocket and other damages that are legally quantifiable and provable—do not cover the full extent of injuries suffered by Plaintiff and the Class, which include monetary damages that are not legally quantifiable or provable.

128.    The hardship to Plaintiff and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued.

129.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the injuries that would result to Plaintiff, the Class, and the public at large.

## VI.  PRAYER FOR RELIEF

Plaintiff and Class Members demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing her counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen PII;

E.    Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.    Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

COMPLAINT—CLASS ACTION - 24

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

G.      Awarding attorneys' fees and costs, as allowed by law;

H.      Awarding prejudgment and post-judgment interest, as provided by law;

I.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.      Granting such other or further relief as may be appropriate under the circumstances.

## VII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims of the Complaint so triable.

RESPECTFULLY SUBMITTED AND DATED this 17th day of November, 2022.

TURKE & STRAUSS LLP

By: */s/ Samuel J. Strauss*
    Samuel J. Strauss, WSBA #46971
    613 Williamson St., Suite 201
    Madison, WI 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423
    sam@turkestrauss.com

    *Attorneys for Plaintiff*

COMPLAINT—CLASS ACTION - 25